**PRIMERA VISTA S.P.R.
de R.L., Appellant,**

v.

**BANCA SERFIN, S.A. INSTITUCION de BANCA MULTIPLE GRUPO FINAN-CIERO SERFIN, Appellee.**

No. 08–97–00383–CV.

Court of Appeals of Texas,
El Paso.

Aug. 6, 1998.

---

Raymond E. White, Akin, Gump, Strauss, Hauer & Feld, L.L.P., Austin, for appellant.

Bruce Koehler, Mounce, Green, Myers, Safi & Galatzan, El Paso, Ioannis Vasilios (John) Anaipakos, Baker & Botts, Houston, for appellee.

Steven L. Hughes, Mounce, Green, Myers, Safi & Galatzan, El Paso, David Dykeman Sterling, Baker & Botts, Houston, for interested parties.

Before LARSEN, McCLURE and CHEW, JJ.

## OPINION

LARSEN, Justice.

This is a plaintiff's appeal from the defendant's successful special appearance. We affirm the trial court's ruling.

### FACTUAL AND PROCEDURAL HISTORY

In late 1993 and early 1994, appellant Primera Vista, S.P.R. de R.L., a Mexican company, was looking for a low-risk, short-term investment. Primera Vista approached Banca Serfin, S.A. Institucion de Banca Multiple Grupo Financiero Serfin ("Banca Serfin"), a Mexican bank, about investing some funds Primera Vista held in bank accounts in El Paso, Texas and at Banca Serfin. Primera Vista was considering using the funds to purchase a ranch on which Banca Serfin was foreclosing, but Leonel Prieto, a manager at Banca Serfin, told Primera Vista that Banca Serfin had a better investment. According to Primera Vista's allegations, Prieto told Primera Vista that the invested funds would remain at Banca Serfin, that the principal of the investment would be guaranteed, that the

interest rate on the investment varied between 11 percent and 19 percent, and that Primera Vista could withdraw its funds from the investment upon ten days notice to Banca Serfin. Primera Vista delivered the funds for the investment and signed a new account agreement at Banca Serfin's offices in Mexico. Some of the checks Primera Vista delivered to Banca Serfin were drawn on Primera Vista's El Paso, Texas bank accounts.

After investing $746,632.84, Primera Vista learned that the investment was not with Banca Serfin at all. Rather, Banca Serfin had invested Primera Vista's money in The First Mexico Income Fund N.V. (the "Fund"), a Netherlands Antilles Corporation and mutual fund that dealt primarily in Mexican stocks. The Fund was not a guaranteed investment as Banca Serfin allegedly represented and Primera Vista lost approximately $260,000 of its principal investment. Primera Vista filed suit in El Paso County, Texas against Banca Serfin, several entities related to Banca Serfin, and the Fund seeking damages for violations of the Texas Blue Sky Laws and Deceptive Trade Practices Act, negligence, negligent misrepresentation, breach of contract, fraud, and breaches of fiduciary duty and the duty of good faith and fair dealing. Banca Serfin filed a special appearance alleging that the El Paso, Texas court lacked personal jurisdiction over it. The trial court granted Banca Serfin's special appearance and Primera Vista appeals with twelve points of error.

### TEXAS JURISDICTIONAL FORMULA

A court may assert personal jurisdiction over a non-resident defendant only if the requirements of both the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and the Texas long-arm statute are satisfied.[1] The long-arm statute allows a court to exercise personal jurisdiction over a non-resident defendant that "does business" in Texas. In addition to a discrete list of activities that constitute doing business in Texas, the statute provides that "other acts" by the nonresident can satisfy the require-

---

1. *See* U.S. Const. amend. XIV, § 1; Tex. Civ. Prac. & Rem.Code Ann. § 17.042 (Vernon 1997); *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 413–14, 104 S.Ct. 1868, 1871–72, 80 L.Ed.2d 404, 410–11 (1984); *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex.1996).

ment.[2] The Texas Supreme Court has repeatedly interpreted this broad statutory language "to reach as far as the federal constitutional requirements of due process will allow."[3] Consequently, the requirements of the Texas long-arm statute are satisfied if the exercise of personal jurisdiction comports with federal due process limitations.[4]

Under the Due Process Clause of the Fourteenth Amendment, a defendant must have certain minimum contacts with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "[5] A non-resident defendant that has purposefully availed itself of the privileges and benefits of conducting business in the foreign jurisdiction has sufficient contacts with the forum to confer personal jurisdiction.[6] A defendant should not be subject to the jurisdiction of a foreign court, however, based upon random, fortuitous, or attenuated contacts.[7] Minimum contacts are particularly important when the defendant is from a different country, as is the case here, because of the unique and onerous burden placed on a party called upon to defend a suit in a foreign legal system.[8]

A defendant's contacts with a forum can give rise to either general or specific jurisdiction. General jurisdiction is present when a defendant's contacts are continuous and systematic, permitting the forum to exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state.[9] General jurisdiction requires a showing that the defendant conducted substantial activities within the forum, a more demanding minimum contacts analysis than for specific jurisdiction.[10] In contrast, specific jurisdiction is established if the defendant's alleged liability arises from or is related to an activity conducted within the forum.[11]

Finally, the assertion of personal jurisdiction must comport with fair play and substantial justice. In this inquiry, it is incumbent upon the defendant to present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable."[12] The following factors, when appropriate, should be considered: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute (including the state's special regulatory interest in areas such as insurance); (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies.[13]

## STANDARD OF REVIEW

Primera Vista raises twelve points of error which challenge the legal and factual sufficiency of most of the trial court's findings of fact and the trial court's overall ruling. When reviewing a legal sufficiency challenge, we consider only the evidence and inferences,

2. *See* Tex. Civ. Prac. & Rem.Code Ann. § 17.042 (Vernon 1997); *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex.1991).

3. *CSR Ltd.*, 925 S.W.2d at 594; *Guardian Royal*, 815 S.W.2d at 226.

4. *See CSR Ltd.*, 925 S.W.2d at 594; *Guardian Royal*, 815 S.W.2d at 226.

5. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 101–02 (1945).

6. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528, 542–43 (1985).

7. *Id.*

8. *CSR, Ltd.*, 925 S.W.2d at 595 (citing *Asahi Metal Industry Co., Ltd. v. Superior Court*, 480 U.S. 102, 114, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987)).

9. *CSR, Ltd.*, 925 S.W.2d at 595; *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex.1990).

10. *CSR, Ltd.*, 925 S.W.2d at 595; *Guardian Royal*, 815 S.W.2d at 228.

11. *Guardian Royal*, 815 S.W.2d at 227.

12. *Burger King Corp.*, 471 U.S. at 477, 105 S.Ct. at 2185, 85 L.Ed.2d at 543–44.

13. *Guardian Royal*, 815 S.W.2d at 231.

when viewed in their most favorable light, that tend to support the jury's finding, and disregard all evidence and inferences to the contrary.[14] If such evidence amounts to more than a mere scintilla, that is more than a basis for mere surmise or suspicion, then the legal sufficiency challenge fails.[15] We evaluate a factual sufficiency challenge by reviewing all evidence and reasonable inferences therefrom and we should sustain the challenge only if the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.[16] In making this evaluation, we may not simply substitute our judgment for that of the fact finder in the lower court, particularly with regard to assessing the credibility of the witnesses.[17] Moreover, we believe that the formulation of factual sufficiency review, that the jury's response must be "against the great weight and preponderance of the evidence," implies some sort of balancing test. That is, there should generally be evidence contrary to the finding, not just weak evidence supporting it.[18]

### DISCUSSION OF POINTS OF ERROR

Primera Vista has grouped its points into three areas for purposes of its briefing and argument: (1) that the trial court should have found specific jurisdiction; (2) that the trial court should have found general jurisdiction; and (3) that a finding of general or specific jurisdiction would comport with fair play and substantial justice. We will address Primera Vista's points as it has grouped them in its argument.

### SPECIFIC JURISDICTION

When the plaintiff asserts specific jurisdiction, the cause of action must arise out of or relate to the non-resident defendant's contact with the forum state in order to satisfy the minimum contacts requirement.[19] Moreover, the contact must have resulted from the non-resident defendant's purposeful conduct and not the unilateral activity of the plaintiff or others.[20] Furthermore, the non-resident defendant's activities must have been "purposefully directed" to the forum and the litigation must result from alleged injuries that "arise out of or relate to" those activities.[21] When specific jurisdiction is asserted, the minimum contacts analysis focuses on the relationship among the defendant, the forum, and the litigation.[22]

### 1. Jurisdiction Based on Use of the Texas Bank Accounts

Primera Vista points to evidence that Banca Serfin deposited Primera Vista's money in Banca Serfin's Texas Commerce Bank account prior to investing the money with the Fund. Primera Vista contends that the deposits constitute an activity Banca Serfin "purposefully directed" toward Texas. Further, Primera Vista maintains that its injuries "arise from or relate to" Banca Serfin's deposit of the money in the Texas bank account. We disagree. There is nothing about the deposits themselves that Primera Vista contends were wrongful or caused it injury. Rather, it was the alleged misrepresentation of the Fund as a safe security and the investment in the Fund rather than in a

---

14. *Davis v. City of San Antonio,* 752 S.W.2d 518, 522 (Tex.1988); *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987).

15. *Sherman v. First Nat'l Bank in Center, Texas,* 760 S.W.2d 240, 242 (Tex.1988); *Stafford,* 726 S.W.2d at 16; *Paragon Hotel Corp. v. Ramirez,* 783 S.W.2d 654, 657 (Tex.App.—El Paso 1989, writ denied).

16. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

17. *Paragon,* 783 S.W.2d at 657–58.

18. *America West Airlines, Inc. v. Tope,* 935 S.W.2d 908, 916 (Tex.App.—El Paso 1996, no writ).

19. *Helicopteros,* 466 U.S. at 414 n. 8, 104 S.Ct. at 1872 n. 8, 80 L.Ed.2d at 411 n. 8; *World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 293–94, 100 S.Ct. 559, 565, 62 L.Ed.2d 490, 498–99 (1980).

20. See *Helicopteros,* 466 U.S. at 417, 104 S.Ct. at 1873, 80 L.Ed.2d at 412–13; *World–Wide Volkswagen,* 444 U.S. at 298, 100 S.Ct. at 567–68, 62 L.Ed.2d at 502.

21. *Burger King,* 471 U.S. at 472, 105 S.Ct. at 2182, 85 L.Ed.2d at 540–41; *Zac Smith & Co. v. Otis Elevator Co.,* 734 S.W.2d 662, 663 (Tex. 1987).

22. *Helicopteros,* 466 U.S. at 414, 104 S.Ct. at 1872, 80 L.Ed.2d at 410–11; *Schlobohm,* 784 S.W.2d at 357.

guaranteed security that allegedly harmed Primera Vista. Accordingly, we do not find that Primera Vista's injury arises out of or relates to Banca Serfin's Texas banking activity.

Moreover, there was evidence that Primera Vista delivered three checks drawn on United States banks denominated in United States currency to Banca Serfin in Juarez, Mexico for deposit in the investment. It was these checks that Banca Serfin deposited into the Texas Commerce account. Banca Serfin presented evidence that it used its Texas Commerce account rather than a Mexican account because the law in Mexico prevented deposit of any currency other than Mexican pesos in Mexican bank accounts. Since a currency exchange would have caused Primera Vista to lose money, Banca Serfin chose to deposit the checks drawn on U.S. banks into its Texas Commerce account, then purchase the securities for Primera Vista from the U.S. accounts. Although Banca Serfin's choice to deposit the checks in Texas accounts cannot be interpreted as purely the unilateral activity of Primera Vista, the evidence supports a conclusion that Banca Serfin's use of the Texas account was driven by Primera Vista's unilateral decision to use checks drawn on United States accounts in United States currency.[23] Accordingly, we find evidence from which the trial court could reasonably conclude that Banca Serfin's use of Texas accounts to accomplish the securities purchase was not activity sufficiently "purposefully directed" toward Texas to establish specific jurisdiction over all aspects of the transaction in the Texas courts.

### 2. Reliance, Damages, and Breach Occurring in Texas

■ Primera Vista maintains that because it used funds from its Texas bank account to purchase part of the ill-fated investment, its reliance on Banca Serfin's alleged misrepresentations, as well as that portion of its damages represented by the investment of the money from the Texas bank account, occurred in Texas. As we have already discussed under the previous section, however, there was evidence from which the trial court could reasonably conclude that Primera Vista unilaterally chose to use money from its Texas accounts for part of the investment. Due process requires that the defendant purposefully availed itself of the privilege of conducting activities within the forum state and must ensure that a non-resident defendant will not be brought into a jurisdiction based solely upon the unilateral activity of another party or a third person.[24]

Banca Serfin arguably committed tortious conduct and breached the alleged investment contract in Texas when it used the funds it had deposited into the Texas Commerce account to make the investment for Primera Vista. Yet, as discussed above, there was evidence from which the trial court could have concluded that Banca Serfin's action was not purposefully directed toward Texas, but was dictated by Primera Vista's decision to use checks drawn on United States banks in United States currency. As a result, the trial court was free to conclude that Banca Serfin did not purposefully commit tortious activity, or any other wrongdoing alleged in this case, in the State of Texas.

### 3. Marketing of the Fund to Mexican Entities with Texas Bank Accounts

■ Primera Vista alleges that Banca Serfin, along with the Fund, systematically targeted the money of non-Texas residents held

**23.** Primera Vista contends in its brief that Banca Serfin directed it to transfer the investment funds from Primera Vista's El Paso bank account directly to Banca Serfin's account at Texas Commerce Bank. In support of this contention, Primera Vista's president, Kelly Romney, stated in his affidavit in support of Primera Vista's opposition to the defendants' special appearance that Banca Serfin representatives instructed Primera Vista to take the investment funds from its El Paso, Texas bank accounts. Banca Serfin's assistant director of correspondence banking contradicted Primera Vista's assertion, however, when he testified at deposition that Banca Serfin had received Primera Vista's United States checks at its offices in Juarez before depositing them in the Texas accounts. Accordingly, we defer to the trial court's resolution of the conflicting evidence.

**24.** *Guardian Royal*, 815 S.W.2d at 226 (citing *Burger King Corp.*, 471 U.S. at 475, 105 S.Ct. 2174).

in Texas bank accounts for investment in the Fund. Primera Vista relies on evidence that representatives of the Fund made ten business trips to Texas for meetings with ten different Texas brokerage houses and financial institutions to promote the Fund from approximately 1993 through 1996. Additionally, Primera Vista charges that representatives of the Fund made regular phone calls and other correspondence to Texas brokerage houses promoting and reporting the performance of the Fund. Although the activities of the Fund's representatives may present a case of purposeful conduct in the State of Texas on the Fund's part, there is no direct evidence that the Fund acted in conjunction with Banca Serfin while engaging in its Texas marketing efforts.

The only direct evidence of any connection we find in the record is between the Fund and Serfin Securities, a Texas company related to Banca Serfin. Serfin Securities was one of five placement agents for the Fund's securities offerings, and Serfin Securities' president and chief executive officer was also a director of the Fund. Primera Vista deduces that because the Fund could not be sold in the United States or to United States citizens under its offering circular, and because Serfin Securities could not do business legally in Mexico, then Serfin Securities must be working in conjunction with Banca Serfin, its related Mexican company, to market and sell the Fund to Mexican nationals with deposits in Texas banks. Thus, Primera Vista argues that Banca Serfin made purposeful contact with the State of Texas in order to market the Fund. Although Primera Vista executed, in Mexico at Banca Serfin, a "New Account Form" bearing Serfin Securities' name in order to open the investment account, this single piece of evidence does not necessarily establish that Banca Serfin participated with Serfin Securities and the Fund in a purposeful scheme to target Mexican nationals with money in Texas banks for investment in the Fund. Although the inference Primera Vista attempts to draw from the evidence is not outside the realm of possibility, it is not so strongly supported by the evidence that we can find the trial court erred in failing to accept it.

### CONCLUSION: SPECIFIC JURISDICTION

The evidence in this case supports a finding that Primera Vista's purchase of a Netherlands Antilles investment, as well as any misrepresentations surrounding the purchase, transpired in Mexico between citizens of Mexico. Although Texas banks were involved in accomplishing the purchase, Primera Vista makes no claim that the operation or functioning of the bank accounts themselves caused it any harm. Rather, Primera Vista contends that the nature of the Fund was misrepresented to it causing it to put money at risk when it sought a guaranteed investment. The evidence is undisputed that these misrepresentations occurred in Mexico. Consequently, we find the evidence sufficient to support the trial court's individual fact findings leading to its legal conclusion that the Texas courts did not have specific jurisdiction over Banca Serfin in this case. Accordingly, we overrule Primera Vista's Points of Error One, Two, Four, Seven, and that portion of Points of Error Three, Five, Six, Eight, Nine, Ten, Eleven and Twelve addressed to specific jurisdiction.

### GENERAL JURISDICTION

Primera Vista also contends that Banca Serfin is subject to general jurisdiction in Texas. A non-resident defendant may be subject to a state's general jurisdiction because of continuous and systematic contacts with the state, even if the underlying cause of action did not arise from purposeful conduct in the state.[25] When general jurisdiction is alleged, a court's minimum contacts inquiry is broader, more demanding, and requires a showing of substantial activities in the forum state.[26] In this case, Primera Vista relies on Banca Serfin's substantial bank accounts and several lines of credit maintained with Texas banks, and a lawsuit

25. *Nat'l Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 772 (Tex.1995).

26. *Schlobohm*, 784 S.W.2d at 357; *Conner v. ContiCarriers and Terminals, Inc.*, 944 S.W.2d 405, 411 (Tex.App.—Houston [14th Dist.] 1997, no writ).

Banca Serfin filed in Texas state court in San Antonio.

### 1. Bank Accounts

There was evidence that Banca Serfin's annualized deposits in eleven Texas banks totaled more than 1.5 billion dollars and the total average balance at any given time in the accounts exceeded four million dollars. The transactions running through these accounts numbered over 33,000 on an annualized basis. It is not the number, however, but the quality and nature of the non-resident defendant's contacts with the forum state that is important.[27] The evidence also showed that Banca Serfin's annualized withdrawals from its Texas accounts equaled or exceeded the annualized deposits. In his affidavit in support of Banca Serfin's special appearance, Eduardo Molina Dubost, Banca Serfin's corporate counsel, asserted that the bank accounts were merely "pass-through" accounts used to facilitate Banca Serfin's Mexican clients' transactions outside of Mexico. A Mexican client could purchase a bank draft from a Banca Serfin branch in Mexico which is then drawn on one of the Texas accounts to pay the client's Texas or United States obligation. Similarly, Jose Antonio Velasco Carmona, Banca Serfin's assistant area director for correspondence banking, testified at deposition that Banca Serfin's Texas lines of credit were used only to support bank customers engaged in importing goods from the United States. The lines of credit are necessary because Banca Serfin's clients importing from foreign countries need lines of credit and money available in both Mexico and the foreign country.

Although Banca Serfin charged its Mexican customers for use of the Texas bank accounts and lines of credit, its maintenance and use of the accounts is more in the nature of facilitating its Mexican customers' business ventures in Texas than engaging in its own business activities. Accordingly, there was evidence from which the trial court could have reasonably concluded that Banca Serfin's Texas accounts are a by-product of Banca Serfin's business in Mexico with Mexican importer customers rather than an indication of any substantial, purposeful business activity conducted by Banca Serfin on its own behalf in Texas. By maintaining and charging for the use of the Texas accounts, Banca Serfin clearly conducts some marginal business activity in the state. This activity alone, however, is somewhat attenuated and not substantial enough to subject Banca Serfin to suit in Texas for all purposes.

### 2. Lawsuit

Voluntarily filing a lawsuit in a jurisdiction is a purposeful availment of the jurisdiction's facilities and can subject a party to personal jurisdiction in another lawsuit when the lawsuits arise from the same general transaction.[28] The evidence shows that Banca Serfin filed suit in Bexar County, Texas in 1988 seeking to enforce a Texas bank's obligation on a letter of credit. Our reading of Banca Serfin's pleading in that case does not reveal any connection to the facts of the case now before us. We therefore do not find that the lawsuits arise from the same general transaction. Consequently, the record supports the trial court's conclusion that Banca Serfin's 1988 lawsuit did not empower the Texas courts with general jurisdiction over Banca Serfin.

### CONCLUSION: GENERAL JURISDICTION

The evidence in this case shows that Banca Serfin is a resident of Mexico and has its principal offices in Mexico City. It does not hold a certificate to do business in Texas and is not required to and does not maintain a registered agent for service of process in Texas. It does not maintain offices, agents, servants, or employees in Texas. Apart from interest on its Texas bank accounts, it does not derive any income in the State of Texas. As we have already determined, Banca Serfin's maintenance of bank accounts in Texas and its single lawsuit unrelated to the subject of the current lawsuit are not sufficient to

---

27. *Guardian Royal*, 815 S.W.2d at 230 n. 11; *Clark v. Noyes*, 871 S.W.2d 508, 520 (Tex.App.—Dallas 1994, no writ).

28. *See, e.g., General Contracting & Trading Co. v. Interpole*, 940 F.2d 20, 22 (1st. Cir.1991).

confer general jurisdiction over Banca Serfin in Texas courts. Having found that the evidence supports the trial court's factual findings leading to its legal conclusion that Texas courts had no general jurisdiction, we overrule those portions of Points of Error Eleven and Twelve challenging the trial court's findings on general jurisdiction and the remainder of Points of Error Three, Five, Six, Eight, Nine, and Ten.

### FAIR PLAY AND SUBSTANTIAL JUSTICE

If minimum contacts are found sufficient to establish jurisdiction, the court must still determine whether the assertion of personal jurisdiction comports with fair play and substantial justice.[29] Since we have found that the evidence supports the trial court's findings of neither specific nor general jurisdiction over Banca Serfin in this case, we need not reach this final element. Accordingly, we overrule those portions of Points of Error Eleven and Twelve addressing fair play and substantial justice.

### CONCLUSION

Having considered and overruled each of Primera Vista's points of error, we affirm the judgment of the trial court.

---

**29.** *See Guardian Royal,* 815 S.W.2d at 231.