NUMBER
13-01-552-CV

 

                              COURT OF APPEALS

 

                   THIRTEENTH DISTRICT OF TEXAS

 

                       CORPUS CHRISTI
B
EDINBURG

                                                                                                     


EL PUERTO DE
LIVERPOOL,                                                                  

S.A.
DE C.V.,                                                                       Appellant,        

                                                   v.

 

SERVI  MUNDO  LLANTERO S.A. DE C.V.,                                Appellee.

                                                                                                     
   

                         On appeal from the
92nd District Court

                                  of Hidalgo County, Texas.

                                                                                    
                    

                                    O P I N I
O N

 

       Before Chief Justice Valdez
and Justices Hinojosa and Rodriguez

                              Opinion by Chief
Justice Valdez

 

El Puerto De
Liverpool, S.A. de C.V. (AEl Puerto@) brings this
accelerated, interlocutory appeal of an order denying its special
appearance.  See Tex. Civ. Prac. & Rem. Code Ann. ' 51.014(a)(7) (Vernon Supp. 2002); Tex.
R. App. P. 28.1.  








Appellant El
Puerto raises four issues on appeal. 
Specifically, El Puerto complains that the trial court=s denial of its
special appearance (1) is not supported by the pleadings, (2) violates the
fourteenth amendment because El Puerto contends its only contact with Texas is
a Apass-through@ bank account,
(3) cannot be based on an alter ego relationship between El Puerto and its
subsidiary corporations, and (4) fails to comport with fair play and
substantial justice. 

We affirm the
trial court=s ruling
denying El Puerto=s special
appearance.

                                                      Background

El Puerto is a holding
company engaged in the merchandising business in Mexico.  Through its subsidiaries, it operates
department and retail stores, purchases and imports goods for resale in Mexico,
and owns retail-related real estate investments.  El Puerto entered into a joint venture with
Kmart Corporation to own and operate retail Kmart super centers throughout
Mexico.  Servi Mundo Llantero, S.A. de C.V.
acquired the exclusive right to construct, operate, and manage the retail
automotive centers of those Kmart super centers; however, the joint venture
terminated after four stores were opened. 









Consequently, Servi Mundo Llantero,
S.A. de C.V., Servi Mundo Llantero U.S.A., Inc., and Enrique Kanarak,
one of the principals of Servi Mundo
Llantero, S.A. de C.V., brought suit against Kmart
Corporation, VTA, Inc., El Puerto, and Jorge Ortega.  These plaintiffs (referred to collectively as
AServi Mundo@) alleged
wrongful conduct in the formation and termination of their agreement regarding
the retail automotive centers. 
Specifically, Servi Mundo
pleaded causes of action for fraudulent inducement, negligent
misrepresentation, negligence, gross negligence, civil conspiracy, common law
fraud, constructive fraud, promissory estoppel, and tortious interference. El Puerto filed a special appearance
on grounds that it is a foreign corporation that is not subject to general or
specific jurisdiction in Texas.  After
the hearing on El Puerto=s special
appearance, the trial court concluded that El Puerto was subject to
jurisdiction in Texas and denied the special appearance based on El Puerto=s possession
and use of a Texas bank account and based on El Puerto=s relationship
with subsidiary corporations who are undisputedly subject to jurisdiction in
Texas.  This appeal ensued.

                                                General
Jurisdiction

A defendant=s contacts with
a forum can give rise to either general or specific jurisdiction.  General jurisdiction is present when a
defendant=s contacts are
continuous and systematic, permitting the forum to exercise personal
jurisdiction over the defendant even if the cause of action did not arise from
or relate to activities conducted within the forum state.  See CSR Ltd. v. Link,
925 S.W.2d 591, 595 (Tex. 1996). 
General jurisdiction requires a showing that the defendant conducts
substantial activities within the forum, a more demanding minimum contacts
analysis than for specific jurisdiction. 
Id.  In contrast, specific
jurisdiction is established if the defendant=s alleged liability arises from or is
related to an activity conducted within the forum.  Id. 
The issue in this case is whether El Puerto is subject to general
jurisdiction in Texas.








                                                Standard
of Review

We begin with
the presumption that the court has jurisdiction over the parties.  See Kawasaki Steel Corp. v. Middleton,
699 S.W.2d 199, 203 (Tex. 1985); Angelou v. African Overseas Union, 33
S.W.3d 269, 277 (Tex. App.BHouston [14th
Dist.] 2000, no pet.).  A nonresident
defendant bears the burden of negating all bases of personal jurisdiction to
prevail in a special appearance.  CSR
Ltd., 925 S.W.2d at 596; Kawasaki Steel Corp., 699 S.W.2d at 203; Fish
v. Tandy Corp., 948 S.W.2d 886, 891 (Tex. App.BFort Worth
1997, writ denied).








          In
considering an order granting or denying a special appearance, we review the
trial court=s resolution of
disputed factual issues under a factual sufficiency of the evidence standard,
and review the trial court=s conclusions
of law de novo.  LeBlanc v.
Kyle, 28 S.W.3d 99, 102 (Tex. App.BTexarkana 2000,
pet. denied) (citations omitted); see Ahadi v. Ahadi, 61 S.W.3d 714, 718 (Tex. App.BCorpus Christi
2001, no pet. h.) (existence of personal jurisdiction
is a question of law); BHP de Venezuela, C.A. v. Casteig,
994 S.W.2d 321, 326 (Tex. App.BCorpus Christi
1999, pet. denied) (op. on re=hg) (same); Valsangiacomo v. Am. Juice Import, Inc., 35
S.W.3d 201, 205 (Tex. App.BCorpus Christi
2000, no pet.) (applying factual sufficiency standard
of review to trial court=s resolution of
factual disputes); Prins v. Van Damme, 953 S.W.2d 7, 13 (Tex. App.BTyler 1997,
writ denied) (same).[1]  However, if a special appearance is based on
undisputed or established facts, an appellate court instead conducts a de
novo review of the trial court=s order
granting a special appearance as a question of law.  Goodenbour
v. Goodenbour, 64 S.W.3d 69, 75 (Tex. App.BAustin 2001,
pet. denied); Ahadi, 61 S.W.3d at 718.  In any event, in conducting its review, the
appellate court considers all of the evidence in the record.  BHP de Venezuela, C.A., 994 S.W.2d at
326; Vosko v. Chase Manhattan Bank, N.A.,
909 S.W.2d 95, 99 (Tex. App.BHouston [14th
Dist.] 1995, writ denied).








If the trial
court makes findings of fact, they are binding on the appellate court unless
challenged on appeal.  Royal Mortgage
Corp. v. Montague, 41 S.W.3d 721, 730 (Tex. App.BFort Worth
2001, no pet.); Silva v. Ysleta Del Sur Pueblo, 28 S.W.3d 122, 124 (Tex. App.BEl Paso 2000,
pet. denied); Linton v. Airbus Industrie, 934
S.W.2d 754, 757 (Tex. App.BHouston [14th
Dist.] 1996, writ denied); Hotel Partners v. KPMG Peat Marwick, 847
S.W.2d 630, 632 (Tex. App.BDallas 1993,
writ denied).  An appellate court may not
disregard findings of fact unless the findings are so contrary to the
overwhelming weight of the evidence as to be manifestly wrong.  See Angelou, 33 S.W.3d at 277; BHP
de Venezuela, C.A., 994 S.W.2d at 327; Hotel Partners, 847 S.W.2d at
632.  As the trier
of fact, the trial judge may draw reasonable inferences from the evidence.  Gen. Refractories
Co. v. Martin, 8 S.W.3d 818, 820 (Tex. App.BBeaumont 2000,
pet. denied); Hotel Partners, 847 S.W.2d at 632.  

We will affirm
the trial court=s ruling if we
can uphold it on any legal theory supported by the evidence.  LeBlanc v. Kyle, 28 S.W.3d 99, 101-02
(Tex. App.BTexarkana 2000,
pet. denied); Fish, 948 S.W.2d at 892; see Guardian Royal Exch.
Assurance Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 226 (Tex.
1991).

                                        Pleading
Jurisdictional Grounds

In its first issue, El
Puerto argues that it is entitled to dismissal because the plaintiffs below
failed to plead that El Puerto is subject to the general jurisdiction of Texas
courts.  The plaintiff has the initial
burden to plead Asufficient@ allegations to show
jurisdiction in Texas.  McKanna v. Edgar, 388 S.W.2d 927, 930 (Tex.
1965); Frank A. Smith Sales, Inc., v. Atl.
Aero, Inc., 31 S.W.3d 742, 746 (Tex. App.BCorpus Christi 2000,
no pet.).  Here, appellee
pleaded that El Puerto is Adoing business in the
State of Texas.@  See Tex.
Civ. Prac. & Rem. Code Ann. ' 17.042 (Vernon 1997) (long arm statute regarding Adoing business@).  Appellee further
pleaded that El Puerto committed torts in Texas.  Appellee=s pleadings were
sufficiently clear regarding its jurisdictional allegations.  See id.  








Moreover, even if appellee=s pleadings were not
sufficient to show jurisdiction in Texas, we would conclude that appellant
waived this complaint because it did not raise this issue in a motion to
quash.  Defective jurisdictional
allegations in a petition must be challenged by a motion to quash, not by
special appearance.  Kawasaki Steel
Corp., 699 S.W.2d at 203; Haught
v. Agric. Prod. Credit Ass.,
39 S.W.3d 252, 257 (Tex. App.BTyler 2000, no
pet.).  El Puerto=s first issue is
overruled.

                                                Due
Process Clause

In its second issue,
El Puerto argues that it violates the due process clause of the fourteenth
amendment for a Texas court to assert general jurisdiction over a foreign
defendant when the defendant=s Aonly@ contact with Texas is
a single pass-through bank account Athat is not directed
toward Texas.@  As discussed below, however, we cannot accept
El Puerto=s characterization of
its business contacts with Texas.  

Under the due process
clause of the fourteenth amendment, a defendant must have certain minimum
contacts with the forum such that the maintenance of the suit does not offend
traditional notions of fair play and substantial justice.  CSR, Ltd., 925
S.W.2d at 594.  A nonresident
defendant that has purposefully availed itself of the privileges and benefits
of conducting business in the foreign jurisdiction has sufficient contacts with
the forum to confer personal jurisdiction. 
Id.  A defendant should not
be subjected to the jurisdiction of a foreign court based on random,
fortuitous, or attenuated contacts.  Id. at 595. 
Minimum contacts are particularly important when the defendant is from a
different country because of the unique and onerous burden placed on a party
called upon to defend a suit in a foreign legal system.  Id. 









The inquiry for
determining whether minimum contacts support general jurisdiction Ademands . . . that all
contacts be carefully investigated, compiled, sorted, and analyzed for proof of
a pattern of continuing and systematic activity.@  Schlobohm v. Schapiro,
784 S.W.2d 355, 359 (Tex. 1990); Michel v. Rocket Eng=g Corp., 45 S.W.3d 658, 681
(Tex. App.BFort Worth 2001, no
pet.).  

In the instant case,
the trial court concluded that El Puerto was subject to general jurisdiction in
Texas based on its own forum contacts, as well as its parent-subsidiary
relationships.  With regard to El Puerto=s forum contacts, the
evidence shows that El Puerto possessed a bank account with Nationsbank
of Texas in Dallas.  El Puerto argues
that it is not subject to general jurisdiction in Texas based on this bank
account because the account is not a minimum contact purposefully directed
toward Texas.  The trial court rejected
this argument and expressly found that El Puerto has Apurposefully made
continuous and systematic use of its Texas bank account, on a grand scale, to
further its business and investment objectives.@ 

The trial court made
several findings of fact and conclusions of law regarding El Puerto=s bank account.  El Puerto does not challenge the trial court=s findings of fact
that:

(1)             
El Puerto
voluntarily and purposefully opened a business money market investment account
at least as early as 1992, and that account remains open today; 

 

(2)             
During the
period for which bank records have been produced, November 1992 through
February 1997, El Puerto deposited into and withdrew from this account anywhere
from tens to several hundreds of millions of U.S. dollars each month; 

 








(3)             
Because of the
high volume of transactions in the account, El Puerto converted the account
into a different type of account in February of 1995 to avoid incurring
excessive transaction fees; and 

(4)             
El Puerto used
this account to exchange pesos for dollars so that it could access
international markets, and to save dollars to pay off bonds, which were
Eurobonds issued in the United States and denominated in dollars.

  

Because El Puerto does not challenge these findings
of fact on appeal, those findings are binding on this Court unless the contrary
is established as a matter of law, or if there is no evidence to support the
finding.  McGalliard
v. Kuhlmann, 722 S.W.2d 694, 696 (Tex. 1996); Nikolai
v. Strate, 922 S.W.2d 229, 236 (Tex. App.BFort Worth 1996, writ denied).  After reviewing the record, we conclude that
these findings are supported by the evidence.








El Puerto challenges only three of the trial court=s findings of fact regarding the bank account: (1)
that it used its account Ato obtain various loans in U.S. dollars, the
proceeds of which went through this account;@ (2) that it has Ainvested many millions of dollars from its Texas
bank account in securities, including short-term interest-bearing investments
called >overnights= offered by Nationsbank
of Texas;@ and
(3) that it Ahas
purposefully made continuous and systematic use of its Texas bank account to
further its business and investment objectives.@  El Puerto
argues that the trial court=s finding that it used the Texas bank account to
obtain loans is against the great weight and preponderance of the evidence
because El Puerto has not obtained loans from Texas banks.  This argument misstates the trial court=s explicit finding as stated above.  With regard to the trial court=s finding that El Puerto invested monies from the
Texas bank account in overnights, El Puerto argues merely that there is no
evidence that overnights are a form of securities, but does not otherwise
attack the trial court=s finding. 
As discussed herein, El Puerto=s attack on the trial court=s finding that it made Acontinuous and systematic use@ of the bank account directly relates to whether or
not El Puerto=s use of the account will subject it to general
jurisdiction in Texas.  

Whether or not a defendant possesses a bank account
in Texas is a factor traditionally considered in determining whether that
defendant is subject to the general jurisdiction of the State.  See, e.g., CSR, 925 S.W.2d at 595; BHP
de Venezuela, C.A., 994 S.W.2d at 327; see also Transportacion Especial Autorizada,
S.A. de C.V. v. Seguros Commercial Am., S.A. de C.V.,
978 S.W.2d 716, 720 (Tex. App.BAustin 1998, no pet.) (factor
that defendant Ainvests in its business from Texas by maintaining a
bank account@ in
Texas supports exercise of general jurisdiction).  








Several Texas cases have considered the
circumstances under which a bank account may suffice to subject a defendant to
personal jurisdiction in Texas. 
Consonant with the other queries regarding general jurisdiction, the
courts analyzing this issue focus on the quality and nature of the defendant=s contacts with the forum state.  In accordance with the standard rules
regarding minimum contact analysis, use of the account must be continuous and
systematic in order to support the exercise of general jurisdiction.  Transportes
Aereos de Coahuila, S.A. v.
Falcon, 5 S.W.3d 712, 720 (Tex. App.BSan Antonio 1999, pet. denied)(infrequent use of
bank account to assist in sporadic purchases insufficient to warrant general
jurisdiction).  Further, the total amount
of funds in the account and the number of transactions running through the
account are not by themselves determinative of the issue of jurisdiction.  See, e.g., Primera
Vista v. Banca Serfin,
974 S.W.2d 918, 926 (Tex. App.BEl Paso 1998, no pet.).  Moreover, mere Apass-through@ bank accounts, where the account merely serves as
a conduit for the funds in transit, will not by itself result in general jurisdiction
over the defendant.  See id.

In Primera
Vista, Banca Serfin=s annualized deposits in eleven Texas banks totaled
more than one and one-half billion dollars and its annualized transactions
numbered more than thirty thousand.  In
support of its special appearance, Banca Serfin presented testimony that its Texas bank accounts
were merely Apass-through@ accounts used to facilitate its clients= transactions outside of Mexico, as were its lines
of credit maintained at Texas banks.  In
considering these facts, the El Paso Court of Appeals stated that:

Although Banca Serfin charged its Mexican customers for use of the Texas
bank accounts and lines of credit, its maintenance and use of the accounts is
more in the nature of facilitating its Mexican customers= business ventures in Texas than engaging in its
own business activities.  Accordingly,
there was evidence from which the trial court could have reasonably concluded
that Banca Serfin=s Texas accounts are a by-product of Banca Serfin=s business in Mexico with Mexican importer
customers rather than an indication of any substantial, purposeful business
activity conducted by Banca Serfin
on its own behalf in Texas.  By
maintaining and charging for the use of the Texas accounts, Banca
Serfin clearly conducts some marginal business
activity in the state.  This activity
alone, however, is somewhat attenuated and not substantial enough to subject Banca Serfin to suit in Texas for
all purposes.

 








Id. at 926.  Thus, by focusing on whether the
accounts benefitted Banca Serfin or third parties, the El Paso court concluded that Banca Serfin=s substantial bank accounts and lines of credit did
not suffice to subject Banca Serfin
to general jurisdiction in Texas.

Similarly, use of accounts which are not Adirected@ toward Texas will not create general
jurisdiction.  See, e.g., Preussag v. Coleman, 16 S.W.3d 110, 123-24 (Tex. App.BHouston [1st Dist.] 2000, pet. dism=d w.o.j.).  In Preussag,
the First District Court of Appeals in Houston considered whether a parent
company=s
banking system with its Texas subsidiaries sufficed to subject the parent
company to general jurisdiction in Texas: 


The six indirect Texas subsidiaries= use of Preussag AG=s Abanking@ and financing systems does not show Preussag AG=s purposeful contacts with Texas.  Preussag AG=s services were provided to the six indirect Texas
subsidiaries as they would be to any member of the Preussag
Group in any location. . . .

 

Like the pass-through accounts of the Mexican bank
in Primera Vista, Preussag
AG=s >banking= systemBin which Preussag Group
members deposit excess funds daily with Preussag AG, Preussag AG lends money on commercial terms, Preussag AG credits and debits members= accounts for inter-member sales, and foreign
currency transactions are conductedBexists to accommodate the whole Preussag
Group, of which Preussag AG is a part.  The fact that Preussag
AG deposits funds under this system in some subsidiaries= Texas bank accounts is a fortuitous contact, since
the >banking= system itself is not directed toward Texas.

 

Id. at 123-24.  In Preussag,
the parent company did not possess a Texas bank account, but merely conducted
financial and banking transactions in the Texas bank accounts of its Texas
subsidiary corporations.  See id.








Considering our analysis of the foregoing cases, we
must keep in mind that fundamental question is whether, focusing on the quality
of El Puerto=s use
of the bank account, El Puerto purposefully availed itself of the privileges
and benefits of conducting business in Texas, and whether El Puerto=s use of the account constituted Asubstantial@ activities in Texas.  See CSR Ltd., 925
S.W.2d at 594-95. 

In this case, the account was originally opened in
1992 as a business investment account, only allowing three checks during each
statement period, and was changed to a business economy checking account in
1995 in order to allow for a greater number of transactions during each
statement period.  According to the
appellant, El Puerto conducted an average of approximately one hundred and
seventy transactions in the account annually.

Miguel Pons, an officer
and employee of El Puerto, testified that the bank account is used generally Afor the purposes of the company=s business.@  Because the
company is listed in the Mexican stock exchange, Ait can have access to some markets,@ so the Apurpose of the account basically is for the needs
of the exchange rate between Mexico and a hard currency.@  Thus,
according to Pons, the Amain purpose is to have hard currency [for the]
businesses of El Puerto.@  

Another officer of El Puerto, Felipe Jacquez, similarly testified that the purpose of the
account is to provide dollars for the company=s operating needs. 
Jacquez testified that El Puerto and its
subsidiaries need to have Texas accounts in order to facilitate their
businesses in Mexico.  Jacquez further testified that El Puerto=s account was used as a vehicle to hold loans
payable to El Puerto in dollars.








According to Pons, the
account is Anot
so much@ used
as an investment.  Money withdrawn from
the account can be used for A[m]any things,@ including investment in an Aovernight,@ which Pons defined as an
Aovernight
instrument, one day to another, that bears interest, in the same bank.@  The record
showed, for example, an overnight in the amount of fifty million dollars dated
January 14, 1994, with a maturity date of January 18, 1994, and an amount due
of $50,015,625.00  at
maturity.

          Pons further
testified that the company utilized the account to save fifty million dollars
to pay for a Eurobond payable in dollars. 
According to Pons, dollar accounts in Mexico
are called AMex
dollars, and a Mex dollar is only worth in Mexico.@  Thus,
because the company had a debt payable in dollars, it Aneeded a means to take the money over there.@  In terms of
the account=s
location in Texas, Pons testified that ATexas was close,@ and he decided to utilize the bank in Dallas in
order to have dollars that the company could not have in Mexico.  

Pons further testified that El Puerto used the bank
account to transfer dollars to its subsidiaries.  The subsidiary corporations then purchased Acheaper@ dollars, and reimbursed the money to El
Puerto.  For example, the bank statements
showed a transfer of five hundred thousand dollars from El Puerto to Distribuidora, and Pons conceded
that the bank statements included several similar transactions. 








Based on our review of the record evidence, we
conclude that the trial court=s findings regarding El Puerto=s bank account
are not so contrary to the overwhelming weight of the evidence as to be
manifestly wrong.  Rather, the record
contains evidence from which the trial court could have found that El Puerto
purposefully established and maintained the requisite minimum contacts with
Texas.  In reaching this conclusion, we
consider not the number, but the quality and nature of the contacts provided by
El Puerto=s use of the
account.  El Puerto=s use of the account
was continuous, spanning at least the period of 1992 to 1997, and systematic,
with numerous and repeated transactions. 
There was testimony from which the trial court could have inferred that Pons specifically chose Texas, rather than other states, as
the locale for its bank account, and therefore purposefully directed its
banking activities toward Texas.  El
Puerto used the account not to benefit customers or third parties but to
directly facilitate its own business. 
Moreover, the account at issue cannot be characterized as a mere pass
through account.  Rather, there was
evidence indicating that El Puerto directly utilized the account for
substantive transactions: El Puerto used the account to provide access to
dollars for use in the international market, exchange currency, invest money,
save dollars to service a debt payable in dollars, deposit loans payable in
dollars, and provide profits to its subsidiary corporations, and thus
indirectly to itself, through the transfer of dollars from the account.  








Through the use of its
bank account, El Puerto conducted Asubstantial@ activities in Texas
and obtained privileges and benefits thereby. We therefore overrule El Puerto=s second issue.  However, we need not decide whether or not
this contact alone would render El Puerto subject to general jurisdiction in
Texas, rather we consider the totality of El Puerto=s contacts with
Texas.  See Schlobohm,
784 S.W.2d at 359. 
The trial court concluded that El Puerto was subject to general
jurisdiction in Texas based on its use of the bank account and based on its
relationship with its subsidiaries which are subject to jurisdiction in
Texas.  Therefore, we will proceed to
address appellant=s third issue
regarding this relationship. 

                                                        Alter
Ego

In its third issue, El
Puerto argues that a plaintiff asserting the Aalter ego@ theory of
jurisdiction has the burden to prove the degree of control that is normal in a
parent-subsidiary relationship and further must produce evidence that the
parent=s relationship with
its subsidiary is not a normal parent-subsidiary relationship. In this case,
the trial court concluded that El Puerto was subject to general jurisdiction in
Texas because El Puerto does business in Texas through the business activities
of its subsidiary corporations that are subject to general jurisdiction in
Texas.  This conclusion is based on the Aalter ego@ theory of
jurisdiction.








Generally, a foreign
parent corporation is not subject to the jurisdiction of a foreign state simply
because its subsidiary is present or doing business there.  Baldwin v. Household Int=l, Inc., 36 S.W.3d 273, 278
(Tex. App.BHouston [14th Dist.]
2001, no pet.); Daimler-Benz Aktiengesellschaft v.
Olson, 21 S.W.3d 707, 720 (Tex. App.BAustin 2000, pet. dism=d w.o.j.,
pet. cert. filed); Preussag, 16 S.W.3d at
119.  However, in some circumstances, a
close relationship between a parent and a subsidiary may justify a finding that
the parent does business in a jurisdiction through the local activities of its
subsidiaries.  Baldwin, 36 S.W.3d
at 278; Conner v. Conticarriers and Terminals,
944 S.W.2d 405, 418 (Tex. App.BHouston [14th Dist.]
1997, no writ).  The rationale for an
exercise of jurisdiction is that the parent corporation exerts such dominance
and control over its subsidiary that they do not in reality constitute separate
and distinct corporate entities but are one and the same corporation for
purposes of jurisdiction.  Baldwin,
36 S.W.3d at 278; Conner, 944 S.W.2d at
418.  The degree of control exercised by
the parent must be greater than that normally associated with common ownership
and directorship.  Conner, 944 S.W.2d at 419. Thus, the alter ego doctrine applies
where the subsidiary is simply a conduit through which the parent conducts its
business.  Jones v. Beech Aircraft,
995 S.W.2d 767, 771 (Tex. App.BSan Antonio 1999, pet.
dism=d w.o.j.).  

The analysis
undertaken when determining whether separate corporate entities should be
treated as one for jurisdictional purposes is different than that undertaken
when determining whether separate corporate entities should be treated as one
for liability purposes.  See Olson,
21 S.W.3d at 721 n.5. 
The operative question in a jurisdictional analysis is whether El Puerto=s subsidiary
corporations are mere Adivisions@ or Abranches@ of a larger whole,
such that the subsidiaries= contacts with Texas
should be attributed to El Puerto.  Id.

Courts must examine
all relevant facts and circumstances to determine whether the parent and
subsidiary should be considered separate or joined.  Id. at 720; Baldwin, 36 S.W.3d at 278; Conner, 944 S.W.2d at 418-19.  Factors to consider include:

(5)             
whether distinct
and adequately capitalized financial units are incorporated and maintained; 

 

(6)             
whether daily
operations of the corporations are separate;

 








(7)             
whether formal
barriers between the management of the entities are erected, with each
functioning in its own best interest;

 

(8)             
whether the
companies filed consolidated tax returns;

 

(9)             
whether
operating capital is financed by the parent or borrowed from other sources;

 

(10)        
whether the
subsidiary=s
stock is owned by the parent;

 

(11)        
whether the
companies share common officers and directors;

 

(12)        
the extent to
which separate books and accounts are kept;

 

(13)        
whether the
companies have common departments of businesses;

 

(14)        
whether the
companies have separate meetings of shareholders and directors;

 

(15)        
whether an
officer or director of one corporation is permitted to determine the policies
of the other;

 

(16)        
whether those
with whom the corporation comes into contact are apprized of their separate
identity; and

 

(17)        
the extent to which contracts between the parent and
subsidiary favor one over the other.

 

Olson,
21 S.W.2d at 720-21; Conner, 944 S.W.2d at 419; Moffett v. Goodyear
Tire & Rubber Co., 652 S.W.2d 609, 613 (Tex. App.BAustin 1983, writ ref=d n.r.e.).  Not all of these factors need be present or
considered.  Olson, 21 S.W.2d at 721.








The record
shows that El Puerto is a holding company engaged in the merchandising business
in Mexico.  It has two direct subsidiary
corporations relevant to this appeal: Operadora
Liverpool and Servicios Liverpool.  Operadora is a
Mexican corporation whose function is Ato provide the
utilities to El Puerto.@  It does not provide services to any company
other than El Puerto.  El Puerto created Operadora as an entity to own stock in indirect subsidiary
corporations.  El Puerto owns 99.9% of Operadora.  Operadora in turn has two direct subsidiaries: Distribuidora Liverpool and Black Pool Trading
Company.  Operadora
owns all of the stock of Black Pool and 99.9% of the stock of Distribuidora.  The
remaining shares of Operadora and Distribuidora
are held by other companies owned by El Puerto.

The parties
have stipulated that Distribuidora does business in
Texas, and would be subject to jurisdiction here.  Distribuidora
purchases products for retail sale. 
Black Pool is a Texas corporation who acts as an Ainterchange
company for importation@ for Distribuidora, and performs works only for Distribuidora. 

          Servicios, El Puerto=s other direct
subsidiary, Ahas personnel
and the computer systems,@ and Ait services the
entire organization@ of companies
to which El Puerto belongs.  Servicios provides employees for the various El Puerto
subsidiaries, and handles the compensation for those employees.  The parties have stipulated that Servicios does business in Texas and would be subject to
jurisdiction here. 

We conclude that the
conflicting evidence authorized the trial court to find that El Puerto=s subsidiary
corporations are mere Adivisions@ or Abranches@ of a larger whole,
such that the subsidiaries= contacts with Texas
should be attributed to El Puerto.  See
Olson, 21 S.W.3d at 721 n.5.  Although each company in the El Puerto family
performs a separate and distinct function, the companies work together as an
interlocking whole.  There is no evidence
that the companies provide similar services to corporations outside of El
Puerto=s corporate family.








There are no formal
barriers between the management of the separate entities, and there is
extensive overlapping of officers and directors of El Puerto and its
subsidiaries, Servicios, Operadora,
and Distribuidora. 
Evidence indicates that El Puerto=s board of directors
participates in and controls the policies, operations, and activities of its
subsidiary corporations.  For example, Pons agreed that El Puerto=s board of directors controls Operadora, and that Operadora is Aunder the
control and direction@ of El
Puerto.  He further stated that Distribuidora is Aunder the
control and operation@ of Operadora.  Pons agreed that Black Pool falls under El Puerto=s direction and
control, A[o]n the way@ or A[i]n a certain way.@

El Puerto provides
operating capital to its subsidiaries, and continues to fund its subsidiaries
as necessary.  Transactions between the
companies inure to the benefit of one corporation over another, as for example,
when El Puerto provides its subsidiaries with Aloans@ without charging
interest.  The companies share computer
systems and have a unified employment department.  Ownership of stock is held almost exclusively
by parent companies, and is otherwise maintained in the El Puerto family of
companies.  Although each of the
companies maintains separate books and accounts and files separate tax returns,
the companies= financial information
is reviewed in a consolidated annual report.








El Puerto argues that
jurisdiction cannot be based on the alter ego doctrine because the plaintiff
below failed to produce evidence of the Anormal@ degree of control
exercised by a parent corporation over a subsidiary, or what constitutes a Anormal@ parent-subsidiary
relationship.  We reject appellant=s contention.  The existence of an alter ego relationship is
determined by considering all relevant facts and circumstances, utilizing the
foregoing factors articulated by the courts. 
See Olson, 21 S.W.3d at 720. Moreover,
appellant=s argument is premised
on the belief that plaintiffs have the burden of proof to establish that El
Puerto has an alter ego relationship with its subsidiaries, and this allocation
of the burden of proof is questionable.[2]  








We conclude that the
trial court=s findings of fact are
supported by factually sufficient evidence, and are not so contrary to the
overwhelming weight of the evidence as to be manifestly wrong.  While formally separate, the companies form a
functional whole in the marketing and retail business.  See id.  We thus conclude that it is proper to view El
Puerto as doing business in Texas through the activities of Servicios,
Distribuidora, and Black Pool.  El Puerto=s third issue is overruled.

Moreover, based on the
trial court=s findings and the
record evidence, we further determine that the trial court=s ruling that El
Puerto is subject to jurisdiction in Texas can be affirmed on the single
business enterprise theory.  See 3-D Elec. Co.
v. Barnett Constr. Co., 706 S.W.2d
135, 139-40 (Tex. App.BDallas 1986, writ ref=d n.r.e.).  The Asingle business
enterprise theory@ is based on equity
and arises from partnership principles: it applies when corporations are not
operated as separate entities, but rather integrate their resources to achieve
a common business purpose.  See N. Am.
Van Lines, Inc. v. Emmons, 50 S.W.3d 103, 120 (Tex. App.BBeaumont 2001, no
pet.).  Factors relevant to determining
whether a single business enterprise is present include (1) common employees,
(2) common offices, (3) centralized accounting, (4) payment of wages by one
corporation to another corporation=s employees, (5)
common business name, (6) services rendered by the employees of one corporation
on behalf of another corporation, (7) undocumented transfers of funds between
corporations, and (8) unclear allocation of profits and losses between
corporations.  See Rio Grande Valley
Gas Co. v. City of Edinburg, 59 S.W.3d 199,
208-09 (Tex. App.BCorpus Christi 2000,
no pet.), modified on other grounds, PG&E Gas Transmission v.
City of Edinburg, 59 S.W.3d 225 (Tex. App.BCorpus Christi 2001,
no pet.); Paramount Pet. Corp. v. Taylor Rental Ctr., 712 S.W.2d 534, 53
(Tex. App.BHouston [14th Dist.]
1986, writ ref=d n.r.e.).









El Puerto and Black
Pool have no employees, but instead have only boards of directors.  There is extensive overlapping of members of
the boards.  Thus, for the purposes of
this analysis, the companies share common employees.  The companies share common offices.  According to the consolidated annual reports,
the corporations share a centralized accounting system.  Servicios pays the
salaries for the company=s employees.  Four of the five corporations share the name ALiverpool.@  The companies provide services to each
other:  specifically, for example, Servicios provides business services for the companies, and
Distribuidora purchases inventory for the companies
to sell.

The trial court
expressly found that El Puerto and its subsidiaries form a functional whole in
carrying out the different aspects of a single merchandising business, and each
of El Puerto=s subsidiaries exists
solely to provide a service to El Puerto=s business
enterprise.  Appellant does not challenge
these findings.  The trial court
concluded that Servicios, Distribuidora,
and Black Pool Ado nothing more than
function as a mere division or branch of a larger whole, such that their
contacts with Texas should be attributed to their parent corporation El Puerto.@

As stated by Felipe
Jacques, El Puerto Aas a company has a
general view and it uses all of its subsidiaries to accomplish its mission.@  The companies work jointly with the other
companies of the group to achieve their goals. 
Based on the record evidence, we conclude that the trial court=s ruling denying El
Puerto=s special appearance
can be affirmed under the single business enterprise theory of jurisdiction.








In sum, considering
the totality of El Puerto=s contacts with Texas,
El Puerto is subject to general jurisdiction in Texas.  See Schlobohm,
784 S.W.2d at 359.

                                       Fair
Play and Substantial Justice

In its final point of
error, El Puerto argues that the exercise of jurisdiction in the instant case
does not comport with the traditional notions of fair play and substantial
justice.  According to El Puerto, this Ais properly a Mexican
case,@ and the State of
Texas has no interest in it.  However, appellees argue that Kanarek was
a Texas resident when El Puerto committed its tortious
acts, and appellee Servi Mundo Llantero U.S.A., Inc., is a
Texas corporation, and thus Texas has a strong interest in protecting its
citizens.








El Puerto=s contacts with Texas
must be evaluated in light of several factors to determine whether a finding of
personal jurisdiction comports with principles of substantial justice and fair
play.  Schlobohm,
784 S.W.2d at 358; Falcon, 5 S.W.3d at
720.  These factors include: (1) the
burden on the defendant; (2) the interests of the forum state in adjudicating the
dispute; (3) the plaintiff=s interest in
obtaining convenient and efficient relief; (4) the interstate judicial system=s interest in
obtaining the most efficient resolution of controversies; and (5) the shared
interest of the several states in furthering fundamental substantive social
policies.  Guardian Royal Exch. Ass., Ltd., 815
S.W.2d at 228; Falcon, 5 S.W.3d at 720.  When an international dispute is involved,
the following factors should also be considered: (1) the unique burdens placed
upon the defendant who must defend itself in a foreign legal system; and (2)
the procedural and substantive policies of other nations whose interest are
affected as well as the foreign government=s interest in its
foreign relation policies.  Guardian
Royal Exch. Ass., Ltd., 815 S.W.2d at 229; Falcon,
5 S.W.3d at 720. 

Only in rare cases
will the exercise of jurisdiction not comport with fair play and substantial
justice when the nonresident defendant has purposefully established minimum
contacts with the forum state.  Guardian
Royal Exch. Ass., Ltd., 815 S.W.2d at 229; Ahadi, 61 S.W.3d at 721.  The nonresident defendant must present a Acompelling@ case that the
exercise of jurisdiction would be unreasonable. 
See In re S.A.V., 837 S.W.2d 80, 85 (Tex. 1992); Guardian
Royal Exch. Ass., Ltd., 815 S.W.2d at 231.

El Puerto has failed
to discharge this burden.  After careful
review of these factors, we conclude there is nothing in the record to indicate
that litigation in Texas would be excessively burdensome to El Puerto.  Many of the events leading to the underlying
lawsuit occurred in Texas.  Plaintiff
below Enrique Kanarek was a Texas resident when the
cause of action arose, and Servi Mundo
Llantero U.S.A., Inc. is a Texas corporation.  El Puerto=s alleged acts affected a substantial amount of
real property, businesses, and assets located in Texas. The interests of Texas
in adjudicating this dispute and the interests of appellees
in obtaining convenient and effective relief clearly weigh in favor of the
exercise of jurisdiction.  We conclude
that requiring El Puerto to answer suit in Texas would not offend traditional
notions of fair play and substantial justice. 
We overrule El Puerto=s fourth issue.








Having overruled each
of El Puerto=s issues on appeal, we
affirm the order of the trial court denying the special appearance. 

 

 

                                     

ROGELIO VALDEZ

Chief Justice

 

Publish.

Tex. R. App. P. 47.3(b).

 

Opinion delivered and filed

this 30th day of
May, 2002.











[1] In
contrast to other courts, the San Antonio Court of Appeals generally applies an
abuse of discretion standard to a ruling on a special appearance.  See, e.g., Whalen v. Laredo Nat=l
Bancshares, Inc., 37 S.W.3d 89, 91 (Tex. App.BSan
Antonio 2000, pet. denied); Transportes Aereos de Coahuila, S.A. v.
Falcon, 5 S.W.3d 712, 717 (Tex. App.BSan Antonio 1999, pet. denied).  However, if the record contains findings of
fact and conclusions of law, the San Antonio Court instead reviews the findings
of fact for sufficiency of the evidence, and reviews the trial court=s
conclusions of law de novo.  See
Lonza AG v. Blum, 70 S.W.3d 184, 188-89 (Tex. App.BSan Antonio 2001, no pet.).  The San Antonio court has questioned the
appropriate standard of review, and discussed application of a de novo
standard.  See Joe Guerra Exxon Station v. Michelin Tyre Pub. Ltd. Co., 32 S.W.3d 383, 386 (Tex. App.BSan Antonio 2000, no pet.).





[2]The Texas
Supreme Court has clearly stated that a nonresident defendant must negate all
bases of personal jurisdiction to prevail in a special appearance.  CSR Ltd. v. Link,
925 S.W.2d 591, 596 (Tex. 1996); Kawasaki Steel Corp. v. Middleton, 699
S.W.2d 199, 203 (Tex. 1985). 
Consistent with this general pronouncement, several courts have held that
the defendant holds the burden of proof to disprove jurisdiction, specifically
with regard to the alter ego doctrine.  See
Stauffacher  v. Lone
Star Mud, Inc., 54 S.W.3d 810, 816 (Tex. App.BTexarkana 2001, no pet.) (citing
Haught v. Agric. Prod. Credit Ass=n, 39 S.W.3d 252, 263
(Tex. App.BTyler 2000, no pet.); Cadle v. Graubart,
990 S.W.2d 469, 473 (Tex. App.BBeaumont 1999, no
pet.); Al-Turki v. Taher,
958 S.W.2d 268, 263 (Tex. App.BEastland 1997, pet.
denied)).  Nevertheless, some
appellate courts place the burden to prove alter ego jurisdiction on the
plaintiff below, see Baldwin v. Household Int=l Inc., 36
S.W.3d 273, 278 (Tex. App.BHouston [14th Dist.] 2001, no pet.); Daimler-Benz
Aktiengesellschaft v. Olson, 21 S.W.3d at 707,
721 (Tex. App.BAustin 2000, pet. dism=d w.o.j.); Jones v. Beech Aircraft Corp., 995 S.W.2d
767, 771 (Tex. App.BSan Antonio 1999, pet. dism=d); Conner
v. Conticarriers & Terminals, Inc., 944
S.W.2d 405, 418 (Tex. App.BHouston [14th Dist. 1997, no writ); 3-D
Elec. Co. v. Barnett Constr. Co., 706 S.W.2d 135,
139-40 (Tex. App.BDallas 1986, writ ref=d n.r.e.); cf. Frank A. Smith Sales, Inc. v. Atlantic
Aero, Inc., 31 S.W.3d 742, 746 (Tex. App.BCorpus
Christi 2000, no pet.)(plaintiff bears ultimate burden
of proof to establish jurisdiction); MGM Grand Hotel, Inc. v. Castro, 8
S.W.3d 403, 408 n.2 (Tex. App.BCorpus Christi 1999, no pet.)(same).