Reversed and Rendered and Opinion filed September 9, 2003


















Motion for Rehearing
Overruled; Opinion of September 9, 2003, Withdrawn; Reversed and Rendered; and Substituted
Opinion filed December 4, 2003.                                               

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-01078-CV 


____________

 

MONI PULO LIMITED, Appellant

 

V.

 

TRUTEC OIL AND GAS, INC., d/b/a MARTINDALE ASSOCIATES LIMITED, AND
TRUTEC INVESTMENT SERVICES COMPANY LIMITED, Appellees

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



On Appeal from 152nd District Court

                                                           Harris County, Texas                       

Trial Court Cause No. 00-16476




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



S U B S T I
T U T E D  O P I N I O N   ON   R
E H E A R I N G

            Trutec
Investment Services Company Limited (a Nigerian corporation)[1] sued
Moni Pulo Limited (another
Nigerian corporation) based on an agreement between the parties related to
development of an oil field (at least partly Nigerian).  Moni Pulo brings this interlocutory appeal from the denial of
its special appearance.  On rehearing, we
withdraw our opinion of September 9,
 2003, deny the motion for rehearing, and issue this substituted
opinion.  Finding insufficient grounds
for personal jurisdiction, we reverse and render judgment dismissing the claims
against Moni Pulo.

            The following facts are not
contested in the parties’ briefs.  All
minerals in the country of Nigeria are owned by the government, which leases prospects
for development to third parties, retaining a share for itself.  The Nigerian government awarded an oil
prospecting license and subsequently a lease (OPL-230) to Moni
Pulo covering land offshore the Bakassi
peninsula in 1992.  Under Nigerian law,
the government must approve any assignment by Moni Pulo of any interest in the lease.[2]

            In 1994, Moni
Pulo retained Trutec to provide
a $1 million “signature bonus” payable to the government and to help find a
“technical partner” to oversee development. 
Their agreement originally provided that Trutec
would receive a 10 percent interest in OPL-230,[3]
but a second agreement signed in London in 1996 reduced Trutec’s
interest to 6 percent.  Three months after
the latter, Brass Exploration (a Nigerian subsidiary of Western Atlas, Inc., another
defendant) agreed to act as Moni Pulo’s
technical partner and received a 40 percent interest in OPL-230.  The Nigerian government approved the
assignment to Brass, but has not approved any assignment to Trutec.

            Drilling operations in OPL-230
resulted in substantial production and revenues.  In May 1998, Trutec
sued Moni Pulo in Nigeria
for a 10 percent interest in these revenues, claiming the agreement reducing
its interest to 6 percent was the result of coercion.  When the case came to trial, Trutec’s representative, Chief Wole
Ariyo, left the stand during cross-examination, and
the country.  When he refused to return
after several continuances, the trial court dismissed the suit.  Trutec’s appeal is
still pending.  

            Two other suits complicate matters.  First, a suit is currently pending in the
Federal High Court of Justice in Abuja, Nigeria
in which Seagull Oil Ltd. alleges that it, rather than Moni
Pulo, is the rightful owner of OPL-230.  Second, after the trial court denied Moni Pulo’s special appearance, the
International Court of Justice ruled that part of the oil field that includes OPL-230
belongs not to Nigeria
but to Cameroon.  Nigerian authorities have indicated they will
ignore the International Court
’s
ruling; there is no indication what Cameroon
may do.

            Trutec
subsequently sued Moni Pulo,
Brass, JP Morgan Chase Bank, and others in Harris County, alleging breach of contract,
conversion, breach of fiduciary duty, tortious
interference, and conspiracy, and seeking an accounting, a constructive trust,
and a declaratory judgment.  Moni Pulo filed a special
appearance, and tendered an affidavit by its chairman, Chief O. B. Lulu-Briggs,
that it has no directors, officers, employees, registered agents, telephone
numbers, or mailing addresses in Texas, advertises and conducts no business in
Texas, owns or leases no property and pays no taxes in Texas, and has never
sued or been sued in Texas except for the present action.  The trial court denied the special appearance
based expressly on a finding of general jurisdiction; from that order Moni Pulo appeals.  The applicable standards have been so often
and recently repeated we do not do so again here.[4]  

            We begin by disposing briefly of Trutec’s argument that specific jurisdiction attaches to its
claims.  Trutec’s
claims seek part of the revenues passing through bank accounts in Texas, but they
do not arise from that occurrence.  While
those funds might satisfy Trutec’s claims, the claims
themselves arise from the agreements negotiated and signed in Nigeria and
London. We hold Trutec’s claims do not arise from or sufficiently relate to Texas to support
specific jurisdiction.[5]  Accordingly, we turn to the
trial court’s finding and Trutec’s primary
allegation—that Moni Pulo
has sufficient contacts to support general jurisdiction.

1.  Venturing with Brass

            Trutec begins
by pointing to Moni Pulo’s
contract with Brass, its joint venturer.  Brass, like Moni Pulo, is a Nigerian entity. 
But Trutec relies on evidence that Brass’s
parent (Western Atlas)
was headquartered in Houston, and that some negotiations
and the eventual execution of the joint venture agreement took place there.[6] 

            For several reasons this evidence is legally insufficient
to support general jurisdiction.  First,
Brass was not a Texas resident, so Moni Pulo was not contracting
with a Texas resident.[7]  Second, the residence of Brass’s parent corporation
is irrelevant absent evidence of alter ego (of which there is none here).[8]
 Third, it was Trutec
rather than Moni Pulo that
initiated contact with Brass.[9]  Fourth, negotiating and signing a contract in
Texas is insufficient if performance takes place elsewhere.[10]  

            It is true that membership in a joint venture between
nonresidents may establish minimum contacts if the business focuses on Texas,[11] but
the venture here focused on another continent. 
In the latter context, the acts of one venturer do not create
jurisdiction (as opposed to liability) for another—that is, there are no
imputed minimum contacts.[12]  In its brief, Trutec
repeatedly asserts that Moni Pulo
“through its agent” made various contacts, but almost invariably the record reflects
an employee of some other company did the deed, with no evidence of direction
or control by Moni Pulo.[13]

            Trutec also relies on several provisions
in the agreements between the two Nigerian entities.  First, an agenda written well before
the parties signed their venture agreement indicates they originally planned to
establish an office in Houston.  But the record establishes they later changed
those plans.  Generally, personal jurisdiction
requires proof that a party purposefully availed itself of the jurisdiction,
not that it planned to do so.  If wishes were minimum contacts, we would be
exercising jurisdiction of plans rather than jurisdiction of persons.

            Additionally, the operating agreement
between the Nigerian companies for a period of 18 months listed a Houston
address for notices to Brass and contained a Texas
choice-of-law provision.[14]  But again, there is no evidence either provision
was ever followed.  During that 18-month
period, all notices were actually sent to Brass in Nigeria, and there were no
disputes regarding the operating agreement that required invocation of Texas
law.  Moreover, as the agreement also designated
arbitration in London as the
exclusive means for settling disputes, it appears the parties intended to
borrow our state’s well-developed oil-and-gas law without availing themselves
of any protection from our courts.[15]  We hold Moni Pulo’s contacts with Brass are legally insufficient to
establish general jurisdiction of Moni Pulo in Texas.

2.  Banking with Chase

            The development of OPL-230 was
financed by a revolving $80 million loan from a syndicate led by Chase Bank.[16]  Moni Pulo signed two promissory notes for the loan, and assigned
a security interest in its receivables as collateral.  For its own security, Chase required the
joint venture to set up two accounts—one for proceeds from the loan and one for
proceeds from the sale of hydrocarbons. 
The loan documents gave Chase “sole dominion” over both accounts.[17]  The loan documents contain choice-of-law and
forum-selection clauses designating the law and courts of New York.[18]

            The most important characteristic of
these accounts is that Moni Pulo
could not control or draw upon either.  The
joint venture documents gave Brass sole responsibility to maintain the accounts.  The loan documents
gave Brass sole discretion to request disbursements.  Only Brass could call for advances on the loan
or pay bills using the accounts.  All account
statements and notices were sent to Brass alone.[19]  Although Trutec asserts Moni Pulo’s agents operated these
accounts, the three individuals it names were each employed by Brass or its
affiliates.  While Brass and
its representatives had Moni Pulo’s
limited power of attorney to conduct all banking activities, this did
not make them Moni Pulo’s
agents for jurisdictional purposes; there is no evidence it could control or
direct any of their actions, and the documents taken as a whole (including the
power of attorney) indicate just the opposite. 


            Banking activities in Texas are often
considered in special
appearance cases,[20] but
they rarely concern accounts over which the nonresident has so little
control.  While Moni
Pulo was clearly a beneficiary of the Chase loans and
accounts, the joint venture and banking agreements delegated control of those
activities solely to Brass.  Nor is there
any evidence Moni Pulo
chose Chase or Houston as the location; indeed, when the loan was paid off in
2001, the joint venture accounts were moved to London.  And the purpose of the banking activities was
not any venture in Texas.

            Due process limits jurisdiction to
nonresidents who purposefully avail themselves of the privilege of conducting activities in
Texas; a party cannot be
required to appear and litigate in Texas based on choices
made by others.[21] Our
sister court has refused to find general jurisdiction over a nonresident corporation
that deposited funds in its subsidiaries’ Texas bank accounts when the choice
to locate those accounts in Texas was made by the subsidiaries alone.[22]  Accordingly, we do not find that Moni Pulo’s Texas bank accounts
indicate that it purposefully aimed and conducted continuous and substantial
activity in this state.

3.  Contracting with Drillers

            Among the many development contracts
signed by Moni Pulo were a
handful with Nigerian subsidiaries of Houston-based drilling companies.[23]  Three were signed by Moni
Pulo (a Nigerian entity), Brass (a Nigerian entity),
Triton Drilling Services Nigeria, Ltd. (a Nigerian entity), and Triton
International, Inc. (a Delaware
company located in Houston).  One was signed by Noble International Limited
(a Cayman Islands entity), Noble Drilling (Nigeria) Ltd. (a Nigerian entity),
and Noble Drilling International, Inc. (a Delaware corporation with a Houston
address).  Each of these contracts
designated Houston as the exclusive forum for disputes,[24] and
each chose Texas law as a primary or secondary source.[25]  No such disputes ever occurred, and the contracts
themselves are unrelated to this litigation.

            Drilling contracts are performed
almost entirely where the drilling takes place.[26] Generally,
a contract calling for performance outside Texas does not subject a party to
jurisdiction here.[27]  Many drilling companies have offices in
Texas, and many use form contracts choosing Texas law and courts for resolution
of disputes.  Following Trutec’s argument to its logical conclusion, anyone that
ever hires one of these companies or signs one of their form contracts thereby
submits itself to suit in Texas by all claimants for all purposes (that is,
general jurisdiction), even suits having nothing to do with either drilling or
Texas.  The constitution does not allow
Texas courts to reach that far.[28]

4.  Buying, Selling, and Coming to Texas

            Trutec broadly
alleges that Moni Pulo “acquired,
either directly or indirectly, every type of good or service necessary to
explore and produce hydrocarbons from OPL-230 from vendors in Houston,
Texas.”  But the evidence supporting this
claim is lacking.  Trutec
cites invoice statements listing vendors and a list of recommended contractors,
but none of these indicate where the vendors or contractors were located.  There was evidence that Moni
Pulo bought software from a Texas
vendor, but this single purchase is hardly enough to support general
jurisdiction.[29]

            Trutec points
to invoices for sales of oil from OPL-230 that Brass sent to Houston
addresses and directed payment to a Houston bank account.  But it is undisputed the sales occurred
outside Texas, and there is no evidence indicating any purchaser’s home office
or state of incorporation.  As noted
above, it was Brass rather than Moni Pulo that issued all invoices,[30] the
purchasers rather than Moni Pulo
who chose where the invoices would be sent, and Chase rather than Moni Pulo that required payment into
the Texas account.  The sale of Nigerian oil outside Texas
by Nigerian entities does not establish jurisdiction because of the choices of
these purchasers or Chase.[31]

            Trutec
also points to approximately fifteen visits to Texas by Moni
Pulo representatives between 1995 and 2001.  There is little in the record regarding the
details of these visits, but it is difficult to say that two or three visits a
year are continuous and systematic.[32]  It does appear all were related to the joint
venture with Brass or the banking arrangements with Chase, and thus focused on Moni Pulo’s business in Africa
rather than any project in Texas.  These occasional and isolated visits to Texas
are insufficient to establish general jurisdiction.[33]

            Finally, Trutec
argues that even if none of these contacts rise to the “minimum” level required
by due process, we should nevertheless find general jurisdiction based on the
sum of them.  But it is the quality of
the evidence rather than the quantity we must consider.[34] Applying
that standard, we find the evidence insufficient to support a conclusion that Moni Pulo purposefully directed substantial,
continuous, and systematic contacts toward Texas.[35]  To the contrary, the contacts have been
fortuitous, attenuated, for limited purposes, and at the insistence of third
parties.[36]  Accordingly, the trial court erred in finding
general jurisdiction over Moni Pulo.  

Fair Play &
Substantial Justice

            Even
were the contacts noted above sufficient to establish general jurisdiction,
exercising jurisdiction over this dispute would offend traditional notions of
fair play and substantial justice.[37]  Considering the unique burdens placed on a
defendant required to defend itself in a foreign legal system, the policies of
other nations whose interests may be affected, and the potential impact on
foreign relations,[38]
we find there are compelling reasons for Texas
courts not to involve themselves in this dispute.

            First, Moni
Pulo is wholly a product of Nigeria—created
under the laws of Nigeria,
owned by Nigerians, based in Nigeria,
and whose sole purpose is production of oil and gas in Nigeria.  Its chairman is in his seventies and suffers
from Parkinson’s Disease.  There was
evidence his absence for an extended period of time would put production at
risk due to instability and unrest in Nigeria.

            Second, Texas has no interest in
this dispute among Nigerian entities regarding Nigerian mineral interests.[39]  The Nigerian government’s ownership ab initio of all
minerals in the country and retention of the power to grant leases and approve
all assignments suggests it takes a close interest in these matters, and would hardly
view Trutec’s claim as a private matter between
private parties.  Generally, Texas has no
interest in adjudicating a case between nonresidents concerning occurrences
that took place outside of Texas.[40]

            Third, Trutec’s
behavior also establishes that exercising jurisdiction over Moni
Pulo would offend traditional notions of fair play.  Trutec originally
filed suit against Moni Pulo
in Nigeria,
then abandoned the action in the middle of trial and in apparent contempt of
court.  Having fled the jurisdiction most
closely connected to the litigation and the parties, Trutec
would now have Texas courts reach
within that jurisdiction to impose an opposite result.  This is reaching too far.

            All of which pales in comparison with
the uncertainty whether Moni Pulo
or even Nigeria
have any claim to OPL-230. 
Texas courts have
substantial experience and expertise in oil–and–gas matters, but none in
Nigerian ministerial affairs or the effect of colonial treaties on African
boundary disputes.  Asking Texas
jurors to decide such matters places them in an untenable position.

            It is not unusual that development
of petroleum resources in far–off corners of the world will show some
connections with Texas entities
and individuals.  But our courts are not
international courts of justice, and can only exercise jurisdiction over those
within our jurisdictional power.  Here,
all operations were conducted through Nigerian entities and concern what all at
least thought was Nigerian territory. 
Given the history of this litigation and the complexities that have
arisen, it is unreasonable for us to settle them here:

The procedural and
substantive interests of other nations in a state court’s assertion of
jurisdiction over an alien defendant will differ from case to case. In every
case, however, those interests, as well as the Federal Government’s interest in
its foreign relations policies, will be best served by a careful inquiry into
the reasonableness of the assertion of jurisdiction in the particular case, and
an unwillingness to find the serious burdens on an alien defendant outweighed
by minimal interests on the part of the plaintiff or the forum State.[41]

 

            Accordingly, the trial court’s order
denying Moni Pulo’s special
appearance is reversed and the claims against Moni Pulo are dismissed for want of personal jurisdiction.

                                                                                                                                                                                                                                                                                                                                                                                    /s/        Wanda
McKee Fowler

                                                            Justice

 

 

Judgment
rendered and Substituted Opinion On Rehearing filed December 4, 2003.

Panel
consists of Justice Fowler and Senior Chief Justice Murphy.  Former Chief Justice Scott
 Brister not participating. [42]











[1]
Only this party signed the agreements upon which this suit is based.  The suit below and this appeal were also
brought on behalf of “Trutec Oil and Gas, Inc. d/b/a Martindale
Associates Limited.”  Martindale was
mentioned in the original agreement as the signatory party’s “overseas Technical
associate,” but is not a signatory of either agreement.  At the time, Martindale was an Irish
corporation, but merged with Trutec Oil & Gas,
Inc., a Texas corporation, after
suit was filed.  The post-suit merger is
irrelevant to our analysis.  See Scott v. Huey L. Cheramie,
Inc., 833 S.W.2d 240, 242 (Tex. App.—Houston [14th Dist.] 1992, no writ)
(holding contract signed after injury occurred was irrelevant to jurisdictional
analysis).  As the jurisdictional
question here does not turn on the involvement by Martindale or Trutec Oil and Gas, in this opinion we refer only to the
contract party as “Trutec.”

 





[2] Petroleum
Act, 1969, ch. 350, paras.
1, 2, 14, 16 (Nig.).

 





[3]
The first agreement provided:

In consideration of the Services
to be provided by the Consulting Group, the owner hereby ASSIGNS to the
Consulting Group 10% (Ten percent) of equity and 10% of buying in fees realized
in OPL 230 and any leases granted therefrom and any
extension thereof.

 





[4] See BMC Software Belgium, N.V. v. Marchand,
83 S.W.3d 789, 793 (Tex. 2002); Am. Type Culture Collection, Inc. v. Coleman,
83 S.W.3d 801, 806 (Tex. 2002).

 





[5] Cf. Primera Vista
S.P.R. de R.L. v. Banca Serfin,
974 S.W.2d 918, 823-34 (Tex. App.—El Paso 1998, no pet.) (finding no specific
jurisdiction based on money passing through defendant’s Texas bank accounts).

 





[6]
Much of Trutec’s “evidence” of minimum contacts
appears nowhere outside its brief.  It
alleges that many Moni Pulo
contracts were negotiated in Texas, but in support of this contention refers us
only to the contracts themselves, which do not indicate where negotiations took
place.  It points to joint interest
billing statements allegedly prepared in Houston,
but cites no record support for this assertion, and the statements themselves
indicate they were sent from Brass in Nigeria
to Moni Pulo in Nigeria.

 





[7]
See Tex. Civ.
Prac. & Rem. Code § 17.042(1) (providing that nonresident does
business in Texas by contracting with Texas resident who is to perform all or part of contract
here).  Trutec incorrectly
asserts Brass was a Texas resident because it listed a Houston address on one agreement and sometimes designated a
Houston address for notices.  But “[a]
corporation’s residence is the place where its corporate affairs are
conducted—its principal place of business.” 
Ring Power Sys. v. Int’l De Comercio y Consultoria, 39 S.W.3d 350, 355 (Tex. App.—Houston [14th Dist.] 2001, no pet.).  Although Texas law requires nonresident
corporations to appoint a registered agent with a Texas address, they remain
nonresidents.  See Tex. Civ. Prac. &
Rem. Code § 17.041 et seq., Tex.
Bus. Corp. Act art. 8.10; Conner
v. ContiCarriers and Terminals, Inc., 944 S.W.2d
405, 417 (Tex. App.—Houston [14th Dist.] 1997, no writ) (holding foreign
corporation did not consent to jurisdiction in Texas by appointing registered
agent).

 





[8] See BMC Software, 83 S.W.3d at 799.  Western Atlas’s merger with Baker
Hughes (located in Houston) in 1998 is irrelevant for the same reason.

 





[9] See D.H.
Blair Inv. Banking Corp. v. Reardon, 97 S.W.3d 269, 275 (Tex. App.—Houston [14th Dist.] 2002, pet dism’d w.o.j.) (holding underwriter’s knowledge
that Texas investors would be among
those solicited did not establish purposeful availment
as underwriter directed none of the contacts toward them).  There was no evidence Trutec was directed by Moni Pulo to initiate any contact with Western Atlas, and Trutec’s decision to do so is not attributable to Moni Pulo.  See
Rauscher Pierce Refsnes,
Inc. v. Great Southwest Sav., F.A., 923 S.W.2d
112, 115 (Tex. App.—Houston [14th Dist.] 1996, no writ) (holding broker whose
duty consists of bringing parties together to negotiate sale is “middleman” rather
than “agent” of either party).

 





[10] See Matthews v. Proler,
788 S.W.2d 172, 174 (Tex. App.—Houston [14th Dist] 1990, no writ) (finding no
jurisdiction over nonresident client in suit for attorney’s fees based on
contract signed in Texas, as representation took place in Wisconsin); 3-D Elec. Co. v. Barnett Constr.
Co., 706 S.W.2d 135, 138–40 (Tex. App.—Dallas 1986, writ ref’d n.r.e.) (holding
negotiations and agreement by telephone and mail between Tennessee
general contractor and Texas subcontractor insufficient to establish personal jurisdiction of
the former in Texas, as construction work was performed in Colorado).

 





[11] See Zac Smith & Co. v. Otis Elevator Co., 734 S.W.2d 662, 666 (Tex.
1987).

 





[12] See Nat’l Indus. Sand Ass’n
v. Gibson, 897 S.W.2d 769, 773-74 (Tex.
1995) (holding conspiracy claim could not be used to impute jurisdictional
contracts of one defendant within the forum to another defendant); see also Shaffer v. Heitner, 433 U.S.
186, 204 & n. 19, 97 S. Ct. 2569, 2579­–80 (1977) (holding jurisdiction
depends on relationship of each defendant to forum, not relationship between
defendants).

 





[13] We
recently found specific jurisdiction of a nonresident corporation that, though
it did not authorize an agreement negotiated in Texas between Texas residents,
nevertheless ratified it by retaining the benefits that followed.  See
Walker Ins. Servs. v. Bottle Rock Power Corp., 108
S.W.3d 538, 552 (Tex. App.—Houston [14th Dist.] 2003, no pet. h.).  But a nonresident does not subject itself to
general jurisdiction every time it retains the benefits that flow from a
third-party’s Texas contacts.  See, e.g., Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 416–17,
104 S. Ct. 1868, 1873 (1984) (finding no general jurisdiction of
Peruvian company that accepted benefits of $5 million contract with Peruvian
joint venture headquartered in Texas); CMMC v. Salinas, 929 S.W.2d 435, 439 (Tex. 1996) (finding no general jurisdiction
of French company that accepted benefits of sale by shipping press to
Texas per instructions of its distributor). 
Accordingly, Moni Pulo’s
subsequent ratification of choices made by third parties does not constitute
purposeful availment sufficient for general
jurisdiction.





[14]
The choice-of-law clause was later amended to designate English law, and still later
Nigerian law.  The address for notices
was also changed to an address in England. 
All amendments to the Operating Agreement were negotiated and signed
outside of Texas.

 





[15] See 3-D Elec. Co., 706 S.W.2d at 145 n.9
(holding choice-of-law clause was not voluntary submission to personal
jurisdiction of Texas courts
absent express understanding to that effect).

 





[16] Trutec also points to evidence referencing a potential
credit agreement with Texas Commerce Bank, but there is no evidence this loan
was ever consummated.

 





[17] Trutec asserts Chase was Moni Pulo’s agent.  But the
loan documents provide that “[e]ach Lender hereby irrevocably appoints and
authorizes Agent [Chase] to act as its agent hereunder,” that “Agent may be
removed at any time . . . by the Majority Lenders,” and that “as between Agent
and Borrower, Agent shall be conclusively presumed to be acting as agent for
the Lenders.”  A paragraph of one
document gave Chase a power of attorney in the event of default, but Trutec presents no evidence that a default ever occurred or
that Chase took any action pursuant to this provision.

 





[18]
There is also a “Floating Debenture” whose purpose is not well explained in the
record, but in which Moni Pulo
purported to appoint the bank as “its attorneys” to act on its behalf under
certain listed covenants and powers.  There
is no evidence that Chase took any action in Moni Pulo’s name under this provision.

 





[19] Trutec points to several statements for a London bank
account that list the account holders as Moni Pulo and Brass and give a Houston “P.O. Box” for the pair.  A post office box is not evidence that either
had an office in Texas or, if so,
which entity’s office it was.

 





[20] See,
e.g., CSR Ltd. v. Link, 925
S.W.2d 591, 595 (Tex. 1996).

 





[21] Helicopteros, 466 U.S. at 416–17, 104
S. Ct. at 1873 (finding
no general jurisdiction of Peruvian company paid from Texas bank, as no evidence
indicated it ever requested or negotiated for that arrangement).

 





[22] See Preussag v. Coleman, 16 S.W.3d 110, 123–24 (Tex. App.—Houston [1st Dist.] 2000, pet. dism’d w.o.j.); see also Primera
Vista, 974 S.W.2d at 926 (finding no general jurisdiction when nonresident’s
Texas bank accounts were accommodation to clients’ business interests and not its
own).

 





[23]
Under the original Joint Operating Agreement, Brass was responsible for negotiating
and awarding such contracts.  The amended
Operating Agreement further limited Moni Pulo’s role to handling relations with the Nigerian
government, people, and businesses. 
There is no evidence Moni Pulo
negotiated or signed any of these contracts in Texas.

 





[24]
The Triton contracts called for arbitration in Houston;
the Noble contract selected Houston
state and federal courts for disputes.

 





[25]
The Noble contract designated Texas
law; the Triton contracts designated U.S.
maritime law, with Texas law
applicable when maritime law was not.

 





[26] See Maxus Exploration Co. v. Moran Bros.,
Inc., 817 S.W.2d 50, 54 (Tex.
1991) (holding in choice-of-law analysis that “nearly all” drilling services
were contemplated and rendered where well was drilled).

 





[27] See Am. Type Culture Collection, 83
S.W.3d at 808 (citing Bearry v. Beech Aircraft Corp., 818 F.2d 370,
375-76 (5th Cir. 1987)).

 





[28] See Primera Vista, 974 S.W.2d at 926 (holding nonresident defendant’s single
previous collection suit in Texas insufficient to establish general jurisdiction); cf. James
v. Ill. Cent. R.R., 965 S.W.2d 594, 597–98 (Tex.
App.—Houston [1st Dist] 1998, no pet.) (holding nonresident railroad’s
solicitation of substantial Texas business and defense of two previous suits in Texas
established general jurisdiction, but would still be unconstitutional under
fair–play test in case filed by Tennessee
resident for personal injury occurring in Tennessee).

 





[29] See Helicopteros,
466 U.S. at
417–18, 104 S. Ct. at 1873-74; BMC Software, 83 S.W.3d at 797.

 





[30]
The invoices generally requested payment to Brass and then listed particular
account numbers.  A few mentioned Moni Pulo as receiving a share,
but payment was still requested in Brass’s name.

 





[31] See Blair Communications, Inc. v. SES Survey
Equip. Servs., Inc., 80 S.W.3d 723, 730 (Tex. App.—Houston [1st
Dist.] 2002, no pet.) (finding no specific jurisdiction of New York
entity that leased equipment in England and shipped it to New York for
use but sent payment to lessor in Texas).

 





[32] See Luker v. Luker,
776 S.W.2d 624, 626 (Tex. App.—Texarkana 1989, writ denied) (holding travel to
visit relatives in Texas three or four times a year was not continuing and
systematic contact).

 





[33] See Helicopteros,
466 U.S. at 417;
104 S. Ct. at 1873 (finding no general jurisdiction based
on purchases and related trips to Texas);
D.H. Blair Inv.
Banking, 97 S.W.3d at 276-77 (finding no general jurisdiction of New
York underwriter that participated in funding two Texas businesses over a ten
year period and solicited half a dozen others); Reyes v. Marine Drilling Cos., 944
S.W.2d 401, 403 (Tex. App.—Houston [14th Dist.] 1997, no writ) (finding no
general jurisdiction of nonresident company that sent representatives to Texas
on at least 204 occasions to inspect potential vendors).

 





[34] See Am. Type Culture Collection, Inc.,
83 S.W.3d at 806; Guardian
Royal Exch. Assurance Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 230
n.11 (Tex 1991).

 





[35] See Am. Type, 83 S.W.3d at 806-07.

 





[36] Id. at 806.

 





[37] See Asahi Metal Indus. v. Superior Court,
480 U.S. 102,
115, 107 S. Ct. 1026, 1034 (1987).

 





[38] See Guardian Royal Exch. Assurance Ltd., 815
S.W.2d at 228.

 





[39]
Texas law would view Trutec’s suit as a claim for a
mineral interests, and thus title to land, see
Yzaguirre v. KCS Resources, Inc., 53 S.W.3d 368,
371 (Tex. 2001); Trutec’s attempt to recast it as a
mere suit for damages would be disregarded, see
Madera Production Co. v. Atlantic Richfield Co., 107 S.W.3d 652, 660 (Tex.
App.—Texarkana 2003, no pet. h.) (holding suit for damages based on ownership
of mineral interest was suit for title to land governed by mandatory venue
statute).  Neither party asserts that
Nigerian law is otherwise.  On this basis,
Moni Pulo also asserts the
trial court had no subject matter jurisdiction of this lawsuit.  As we determine the trial court had no
personal jurisdiction, we do not reach that question.  See
generally Ruhrgas AG v. Marathon Oil Co., 526 U.S.
574, 577-78, 119 S. Ct. 1563, 1567 (1999).

 





[40] See Guardian Royal Assurance, 815 S.W.2d
at 232–33 (holding Texas had no interest in adjudicating an
insurance dispute between two nonresidents); James, 965 S.W.2d at 599 (holding fair play offended by exercise of
jurisdiction over Tennessee resident’s claim against nonresident defendant for
personal injuries that occurred in Tennessee).

 





[41] Asahi, 480 U.S.
at 115, 107 S. Ct. at 1034.

 





[42]
Senior Chief Justice Paul Murphy sitting by assignment.